Good morning, Your Honors. Elizabeth Torres, on behalf of Ms. Estrada-Ochoa. Could you get the mic a little closer to you? Yes, I apologize. Is that better? Just keep your voice up so we can hear you. Thank you. My name is Elizabeth Torres, and I'm here on behalf of Ms. Estrada-Ochoa. And the two issues that I would like, Your Honor, to consider as to why we did this petition for review, we completely disagree with the immigration judges and the BIA's contention that there was no relationship between the petitioner and her father, and that he purposely omitted her name from his asylum application. It is our position that neither court found neither petitioner nor her dad as not credible. Let me ask you a question. Yes, Judge. Okay, let me just ask you a question. Yes, Your Honor. We sent out an order asking the parties to be prepared to advise us, inform us this morning, the status of the father's asylum application. To my knowledge, and I have not been able to speak with him in the last week, but to my knowledge, his application has not been adjudicated, and it's still sitting with CIS. CIS? Anaheim office, the asylum office. Is that pursuant to that case? I believe it's pursuant to ABC settlement, Your Honor. There are some ABC cases that have been processed and some that have not, and his has not. He has not had an interview yet as of last week when I spoke with the family. Now, I also would like to say that I had a death in my family two-and-a-half weeks ago, and I've been out of the office a lot, so there may be a message on my machine, but I don't think so. I checked with my staff on Friday. Should we ask the government right now if he knows anything further? Certainly. Yes, Judge. Your Honors, I don't have any additional information about the status of Mrs. Stradocho's alleged father's asylum application. Thank you. May I have one? Or did you have another question? Well, I don't know. I just have one other question related to this father's application. Yes, Judge. Why doesn't he just amend it to add her as a derivative applicant? He should have done that probably from the inception of the application. Well, how long have you been working on the case? I've been on the case since 2006. 2006, Your Honor. Well, I guess you can do it afterwards, too, as well. Correct. There's a period of time you have two years after the asylum is granted, if it's granted. Correct. I was waiting to go through the court system. I know I could have done it, amended it, before coming before Your Honors. I'm aware that's also an option, but I know I have a window of time later on. Form I-730, is that available only after asylum has been granted? To my understanding, Your Honor, yes. That is a follow-to-join, and that would occur after the grant of the asylum. And she has to be in this country at that time? Well, it will depend what the law is like at this point. Because if it's granted now, she – Let's say it's granted. Let's say that the father's asylum application is granted tomorrow. There's going to be an issue because she entered – the manner that she entered, her follow-to-join is going to be contested by the government.  Correct. As opposed to being in – If she was in Guatemala, I wouldn't – it wouldn't be an issue. It would be a very clear follow-to-join. And when – because she's here, the government can make an issue out of that. Is that correct? Yes, Your Honor. I see. And my understanding is because of the entry. It was an undocumented entry. So what's before us right now that we should be doing with this case? What we were seeking was for the court to remand this case specifically to the issue of the relationship because the way that both holdings read, there is no relationship between them. And our argument is that there was sufficient evidence – there was substantial evidence to hold otherwise, that there were father and daughter, and that his omission of her on the application was not purposeful. It was many other things, but not purposeful. And there's evidence that he was asked – he was asked at the very beginning if this was his daughter, I guess. She asked about the – she was asked about her dad. She said the name. Her application mentions his name. She said – I'm sorry. He declared that he had sent funds to her over the years, which the government routinely uses to show some kind of family relationship, that funds are being sent to the person in the country of origin. He explained that he had been assisted by a notario. He was very – it was very difficult for him to have a very concrete answer, but he never said that, to our understanding, that he purposely omitted her from the application and was intending to not – On the contrary, he said, I didn't think she'd ever leave, so I didn't consider putting it down. That's why I listed only my son. Isn't that what happened? Yes, he said that. And then he also said that no one ever reviewed the application with him. So our position would also be that if someone would have sat down and reviewed the application, that would have offered another opportunity for him to go, well, maybe I should put her in here. Maybe I should do this fully and completely. But it wasn't to harm her, or it wasn't to deny the bond between them. That's our contention. Well, let me ask you this. Yes, sir. So it gets up to the BIA, correct? Correct, sir. And now there's a statement in the BIA's opinion where they kind of assume that he's the father, right? I didn't read it that way. Well, it says because the respondent is not asserting a claim against an attorney, we are unable to find that her father was afforded ineffective assistance of counsel. Well, correct. They say that it is her father, but then they agree with everything the immigration judge said. So it is inconsistent to us because there are parts of testimony that are taken as fact and parts that are challenged. He acknowledges, the immigration judge acknowledges, yes, a document preparer helped you, but then that sentence before that says, no, you prepared your own application. So it's either apples or it's oranges. Either you believe him or you don't believe him. Well, the board starts out by saying the respondent also contends that the immigration judge failed to consider the possibility that her father. Right. I don't know. So what is it? I still am not sure, you know, I don't know if you've really answered Judge Fletcher's question yet. What is it that we're supposed to do with this case? We would like a remand specifically on the issue of a parentage, if this is in fact his daughter, and as to ---- You mean because the board didn't specifically make a finding one way or another by saying we agree with the I.J.? Yes, sir. And specifically to the ---- Don't we assume that the BIA agrees with the I.J.? But the I.J. didn't find that there was a relationship between them. That's why I'm torn. The I.J. specifically said that they were unable to conclude that this was a father-daughter relationship. But then, okay, they decide that there is a relationship or there isn't a relationship. What then? Well, then there's an issue of ABC and any derivative benefits that may or may not exist for her, and whether or not the government would then be willing to administrative clause pursuant to that. But that's something that we can't get to until we figure out if there's a relationship and any kind of derivative status that she could obtain through ABC. So if we remand and they decide, well, you know, he's her father, what happens next? Then we would seek to work with the government for administrative closure pending his adjudication. When you say administrative, what do you mean by administrative closure? That the judge would be amenable or the Board of Immigrations to administratively close the case, and that has to be with, to my understanding, mutual agreement of both sides, and keep the, hold the case in abeyance up until Mr. Estrada had his ABC case. And if he fails? Well, then the case would be... There's nothing that... Correct. And if he succeeds? And if he succeeds, then I believe she would be eligible for a follow-up to join, but it's going to depend on what the regulations are then. Should we hear from the government as to how they think we should deal with this? Absolutely, Judge. Thank you. Good morning again, Your Honors. David Ducon on behalf of the government. In this case, I think it's important to take a step back for a moment and consider what applications Petitioner presented to the immigration judge. In this case, the only application she presented to the immigration judge was a Form I-589, application for asylum, withholding of removal, and protection under the Convention Against Torture. And in this case, although the immigration judge found that the immigration judge found that Petitioner did not demonstrate sufficient evidence to show that Mr. Estrada Lopez was her father, he still concluded that assuming arguendo that he is her father, and assuming arguendo that all the information that he provided in his asylum application is correct, because Ms. Estrada Ochoa was basing her asylum application solely on his and had no claim of her own in her asylum application, the IJ said he still found that she failed to demonstrate eligibility for asylum, withholding, or protection under CAC. In other words, the immigration judge believed that Mr. Estrada Lopez was her father for sake of argument, for purposes of the only application that was pending in front of the court. There are two other issues that Ms. Estrada Ochoa brought up in immigration court. One was derivative asylum, and one was derivative ABC. Well, to begin with, with respect to derivative asylum, it is true that there are some benefits that a child or a spouse could get from a granted asylum application here in the United States. But putting aside whether she's in the United States, outside of the United States, before the immigration judge, Ms. Estrada Ochoa never demonstrated that her father had even filed, let alone been granted asylum. So there's no way to derive asylum eligibility from an individual who never was granted asylum and never even applied or filed his application with the proper authorities. The burden was on her to demonstrate any eligibility for benefits under the Act, and in this case she failed to provide any evidence of eligibility for derivative asylum because she failed to demonstrate that her father had applied for or been granted asylum. Should we be dismissing this, but with the caveat that it doesn't preclude her seeking to join her father's claim, asylum, grant of asylum, if it is granted? She could file an I-730. However, my understanding is that she's now over the age of 21. She's no longer a child. But doesn't the age carry along from the child? If she was placed on her father's asylum application before she, quote, unquote, aged out. But she would have to be on his application before she reached 21? That's my understanding, Your Honor. And in this case, the other issue was derivative ABC. And Ms. Estrada-Ochoa doesn't claim to have been present here in the United States in 1990 in order to be a class member of ABC or under the agreement, sorry, excuse me, the settlement agreement in American Baptist Churches versus Thornborough. And so she never demonstrated eligibility for ABC to begin with. And so there was no relevance of the question of whether Mr. Estrada-Lopez is her father or not. Because even if he had placed her on his asylum application, that only would have assisted her with one prong of the three-prong test which is required for ABC. In other words, presence in the United States in order to be a class member for ABC, registration for ABC in a timely manner, and application for asylum by a certain date. So had he placed her on the asylum application, she could have been placed on his application by that date. But she still would not have been present by 1990. In other words, it was irrelevant whether or not she was his daughter for purposes of ABC. And I'd also like to address the issue of administrative closure, which was brought up by Petitioner's Counsel here in argument today. To begin with, she's waived this argument by failing to present it in her opening brief to this court. And second of all, I would just note to the court that in a case called Diaz-Cobar-Rubias v. Mukasey, which is 551 F. 3rd, 1114, in 2009, this court explained that there's no statutory or regulatory basis for administrative closure, and as such, there's no meaningful standard for evaluating whether an immigration judge or the agency abused its discretion in failing to administratively close. So your position is it doesn't matter whether the father gets asylum or not. She's not eligible to tag along on any basis. Well, the government's position is simply that the petition for review should be denied because she failed to demonstrate that the record compels her eligibility for asylum. And that the other arguments are in some ways irrelevant because the immigration judge assumed for purposes of argument that she was the daughter of Mr. Estrada Lopez for the only pending application before the court, asylum. And the immigration judge said that even if she was his daughter, he feared the Guatemalan army years previously, Ms. Estrada Ochoa, had lived in Guatemala her whole life from early 1980s until 2003 when she arrived in the United States, and that she was not harmed herself, and that the situation had changed, noting the country conditions and the 1996 accords between the Guatemalan government and the guerrillas. And so the record doesn't compel reversal in this case, and the petition for review should be denied. That's the government's position. There's no way, sir, in your view, there's no way she could, the father could amend his asylum application back to when he filed it. I'm not certain if that's possible. I think I couldn't tell you that at this moment in time. But in either case. Non-pro-tunk, as we often sometimes say. I'm not certain what the rule is about non-pro-tunk changes in the asylum application. I couldn't provide you with further information. But the point is, is that for purposes of the asylum application, the immigration judge assumed that she was the daughter of Mr. Estrada Lopez. And because she didn't demonstrate that Mr. Estrada Lopez even filed, let alone was granted asylum. Let's not understand what you're saying. You're saying that the question of parentage is irrelevant. That's correct. It was only relevant for one purpose, because she submitted Mr. Estrada Lopez's asylum application attached to her own, and instead of providing her own reasons for fear and return to Guatemala, she said, see attached application, which was Mr. Estrada Lopez's application. She's relying on her father. She's relying on her, quote-unquote, father's application. And so the immigration judge said, I don't find that you've provided sufficient evidence that he's your father. But for purposes of the only application before me, I'm going to assume for a second, arguendo, that he is your father. And even if he is, and even if everything he said in his application is true, he feared the Guatemalan Army 15 years ago, and things have changed in the country. You grew up in that country yourself, and you don't claim fear for any particular reason yourself. And so he denied the application, and the record doesn't compel reversal based on that evidence. And so the government's position is a petition for review should be denied. Now, does that preclude some other judge from granting him asylum? His case is independent of hers, and if his case is still pending, then the Department of Homeland Security will have the opportunity to adjudicate his petition, assuming it is still before them, and then he could be granted. And if he eventually becomes a citizen, he could petition for her to come to the United States to get a visa. However, if she is removed, she might be ineligible for that for a while. But you're in a sense saying that an ABC application for asylum is one to which a child cannot attach himself or herself unless they, too, have been persecuted? Well, I'm sorry. I'm sorry if I misrepresented that. What I'm saying is that it's possible. I'm just trying to understand. Okay. It's possible to get a derivative status through a parent's asylum application. In other words, if a father or mother applies for asylum and is granted in the United States, their spouse or child may get following to joint status. In other words, they, too, would get asylum without demonstrating that they themselves fear persecution. So in this case, if that was the theory, then Ms. Estrada Ochoa would have to demonstrate that her father applied for asylum and was granted asylum and included her in the application. And if he didn't do so, he could make some sort of amendment. However, that wasn't the case here. If we leave it as it is, is it now a matter of law that she is not his daughter, so that a finding would preclude him from applying for her? The decision of... The decision of the immigration judge was that she is not eligible for asylum, withholding, or protection under the Convention Against Torture, and the agency, the board, affirmed that decision. Perhaps I'm not asking you well, and I apologize, but what happens if we just affirm? Now, the father now makes an application for her. Does the government then take the position? Oh, no, you're not her father. That's already been adjudicated. Well, to begin with, she's over the age of 21, so she's no longer a child. In other words, she's no longer eligible to derive status just based on her father's application. So she would have to file her own asylum application in any case. If something was to be done for this petitioner, assuming she is the daughter, excuse me, of Mr. Estrada Lopez, it must have been done before she aged out, because the only protection for a child is if there's some application pending, some request, but a child isn't protected forever as an adult if they never requested anything. Is there any case that kind of deals with this that says that if she isn't joined in before she herself becomes 21 that she can't do it? Your Honor, I could look into that further. I would not know off the top of my head if there's a case for jail specifically with that issue. I'd feel better if there was some authority here for what we're supposed to do. I understand. I would just reiterate the government position. I'm sorry. I see we're just over time. Didn't we sort of address something similar in El Himry versus Ashcroft? I'm sorry. I couldn't tell you more about that case off the top of my head, but I am happy to look further into that. That may be a little bit different there. I think he was a minor. Again, Mr. Estrada-Lopez's application still apparently is pending before CIS, but no evidence has been presented in. I guess if the application was granted, then we're good. After we sent out a little order, did you check with CIS to see if there was a – I mean, did you check someplace in the system and say is there an application pending by Mr. – what's his name? Mr. – what's his – Mr. Estrada-Lopez. His first name, whatever it is. I mean, did you check? Well, Petitioner never presented evidence that it was ever filed. No, I mean, we sent out an order that said we want you to inform us the status of his application. The question to you was did you check? The answer is yes or no. No. Why not? But to begin with – Well, why not? Let me begin by saying that it was not me who responded to this notice, but I understand that the court requested – Not I. Not I. It requested a notification whether there were any changes in the status of the case that would affect – No, no. There was another order that we sent out last week. There was another order that was sent out last week? Yes. Then forgive me, Your Honor. I sent out – we sent out an order last week that said that the parties are to be prepared to inform the court. Maybe you didn't get it. I don't know. Maybe it wasn't filed. I thought it was. Yes, it was filed. Yes. Yeah. At oral argument of this case on Monday, May 3, 2010, the parties shall be prepared to inform the court of the status of Gerson Locale Estrada Lopez's application for asylum and or whether he has otherwise obtained lawful resident status. Mia Culpa. I have no explanation for you. Because, you know, as you said earlier, if his application has been denied through that ABC program, as even counsel acknowledged, it's over. The case is over. There's nothing, anything – there's nothing that could be done here. The only thing – If it's been granted, then – I can submit additional information to the court about the status of his application and do further research. I did not receive that notice. It was added to this case at a late moment in time. As you know, I filed a motion in another case just last Thursday. All right. Again, I'm sorry. We'll confer afterwards and we'll – we might – Determine if you'd like additional information. Yes. Okay. We'll hear from you. All right. Thank you. Thank you. Do you have anything else?  Thank you very much. All right. Counsel, petitioner, have anything else? Yes. Thank you. Just specifically to the issue of notice, when we filed – the issue fits on both feet, ours and the government's. When we filed her asylum application and we filed his application, the first page has ABC written on the top. They were on notice. They've been on notice as long as we've been on notice, since 2006. And since we've been saying we're relying on it, it's been filed with CIS, then there's some kind of burden they have to figure out if what we're saying is true or not. They do it all the time as we litigate hundreds of cases at EYR. I don't litigate that many. But that office has the ability, through the stroke of a two-minute inquiry on the computer, to figure it out. That's all I wanted to say, Judge. Thank you.
judges: Walter, Fletcher B. , Paez